Bernard **SAMOFF**, Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD**

v.

**PHILADELPHIA NEWSPAPER PRINTING PRESSMEN'S UNION NO. 16,** and Bulletin Company.

**Civ. A. No. 69-1811.**

United States District Court
E. D. Pennsylvania.

Oct. 14, 1969.

William J. Davis, National Labor Relations Board, Philadelphia, Pa., for plaintiff.

Bernard N. Katz, Philadelphia, Pa., for Philadelphia Newspaper Printing Pressmen's Union No. 16.

Peter D. Walther, Philadelphia, Pa., for Bulletin Company.

## OPINION

KRAFT, District Judge.

This is a petition filed by the Regional Director of the National Labor Relations Board (Board) for a temporary injunction under Section 10(j) of the National Labor Relations Act, (Act), as amended, 29 U.S.C.A. § 160(j), until the Board issues its final order in certain charges now pending before it.

The petition is based upon the Regional Director's conclusion that there is reasonable cause to believe that respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(a) (1) and (3) and Sections 8(b) (1) (A) and (2) of the Act. 29 U.S.C.A. § 158(a) (1) and (3) and § 158(b) (1) (A) and (2).

A full and complete hearing on the charges has been held by the Board and the notes of testimony of such hearing as supplemented by the hearings before this Court constitute the record in this matter.

This labor dispute had its genesis in the closing, in early 1969, of the Curtis Publishing Company's printing plant, located in Sharon Hill, Pennsylvania, which resulted in the unemployment of a number of pressmen. The respondent, Bulletin, which was in need of journeymen pressmen sought to hire eight former Curtis employees in February, 1969.

Pursuant to an oral arrangement, the Bulletin on February 13, 1969 referred the list of eight applicants, who were members of a sister union (Local 749) to John Reilly, business manager of the respondent union (Local 16) for approval. The Bulletin was informed by the Union that the eight Curtis applicants would only be accepted under a court order. Additionally, the Union warned the Bulletin that if the eight Curtis applicants were hired pursuant to a court order, members of the Union would not help or assist them and that the Union wanted nothing to do with them. As a result of such threats the Bulletin refused to hire the eight applicants.

One of the eight applicants, Richard A. Cummings, sought clearance from the Union which was denied. Cummings then filed unfair labor practices with the Board.

On April 30, 1969, the Bulletin entered into an informal settlement agreement with the Board and agreed to offer immediate employment to the eight Curtis applicants and posted a notice of the agreement in its pressroom.

Six of the eight applicants accepted the Bulletin's offer of employment and were scheduled to begin work on May 26, 1969. On May 20, 1969, the Bulletin posted notice of this fact and on May 21, 1969, the respondent Union engaged in a slowdown which caused the Bulletin to run its editions behind schedule. The slowdown continued until May 22, until the Bulletin notified the Union that the Curtis people would not be put to work as scheduled.

At the initial hearing before this Court on August 19, 1969, the parties entered into a Stipulation which in effect required the Bulletin to offer the eight Curtis people employment and the Union agreed not to engage in any work stoppage without prejudice to its right before the Board to contest the qualifications of the Curtis people to be hired by the Bulletin as qualified journeymen pressmen.

Thereafter, the Union advised its membership of the Stipulation and instructed its members not to interfere with the Curtis people, but also instructed its members not to assist or cooperate with the Curtis people in any way.

On August 27, 1969, Cummings and a Mr. Roberts commenced employment with the Bulletin. Immediately upon their commencement of work they were subjected to profanity, assaults and threats of bodily harm by members of Local 16. Bottles of ink were dumped on their heads and clothing, hard boiled eggs were thrown at them by groups of employees who continually surrounded them at their presses.

In the face of such harassment, the Bulletin found itself incapable of protecting the safety of the Curtis people and on September 4, 1969, released the Curtis employees, and, to date, has not allowed them to resume employment.

The Union contends that under the testimony of Cummings and Roberts no *official* of Local 16 participated in or ratified the deplorable conduct of the individual union members who were termed uncontrollable by Cummings and Roberts.

■ We find that such a contention ignores and distorts the realties which are manifested in this record. Here we have a situation in which the Union repeatedly expressed its outright opposition to the hiring of the Curtis people. It actively advised its members to have nothing to do with the new employees. By such intransigence it engendered an attitude of gross hostility in its members which culminated in the acts of violence previously set forth. Having sought to thus unlawfully influence its members, we conclude that the Union cannot escape its responsibility by merely washing its hands of official participation in the unlawful violence.

■ Accordingly, we conclude that there is a real and immediate threat of irreparable harm resulting from such intimidation in that with the anticipated lapse of time in the normal Board procedures, the Curtis people may drift away and lose their determination to resume employment with the Bulletin, and also, that the Bulletin will not offer additional employment to other Curtis people under fear of economic reprisal.

We cannot allow such a situation to continue. Accordingly, we conclude that the petitioner has reasonable cause to believe that the Union and the Bulletin have engaged in unfair labor practices within the meaning of the Act, and that the continuation of these practices will impair the policies of the Act. 29 U.S. C.A. § 151.

The foregoing opinion represents the Court's findings of fact and conclusions of law.

### ORDER

Now, this 14th day of October, 1969, It is ordered that the proposed order granting a temporary injunction as submitted by the Board is hereby approved and shall become the Order of this Court.

### ORDER GRANTING TEMPORARY INJUNCTION

This cause came on to be heard upon the verified petition of Bernard Samoff, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended, pending that final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The Court, upon consideration of the pleadings, evidence, briefs, argument of counsel, and the entire record in the case, has made and filed its Findings of Fact and Conclusions of Law, finding and concluding that there is reasonable cause to believe that respondents have engaged in, and are engaging in, acts and conduct in violation of Sections 8(a) (1) and (3) and Section 8(b) (1) (A) and (2) of said Act, affecting commerce within the meaning of Section 2(6) and (7) of said Act, and that

such acts and conduct will likely be repeated or continued unless enjoined.

Now, therefore, upon the entire record, it is

Ordered, adjudged and decreed that, pending final disposition of the matters involved pending before the National Labor Relations Board, respondent Philadelphia Newspaper Printing Pressmen's Union No. 16 and respondent Bulletin Company, their officers, agents, representatives, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be, and they hereby are, enjoined and restrained as follows:

A. Respondent Philadelphia Newspaper Printing Pressmen's Union No. 16 is enjoined and restrained from:

(1) Maintaining, enforcing or otherwise giving effect to any agreement, arrangement, understanding or practice which conditions the hire or employment of journeymen pressmen with Bulletin Company upon membership in, or clearance or approval by, Philadelphia Newspaper Printing Pressmen's Union No. 16.

(2) Causing or attempting to cause Bulletin Company to refuse to hire Edward Henderson, Richard Cummings, Leo Coyle, Charles Shaller, Harold Heydt, Albert Boenning, Francis Roberts and George Trock, or any other applicants for employment because they are not members of, or have not received clearance or approval from, Philadelphia Newspaper Printing Pressmen's Union No. 16.

(3) In any like or related manner, restraining or coercing employees in the exercise of rights guaranteed in Section 7 of the Act, or, in any like or related manner, causing or attempting to cause Bulletin Company to discriminate against employees in violation of Section 8(a)(3) of the Act.

B. Respondent Philadelphia Newspaper Printing Pressmen's Union No. 16 is ordered and directed to:

(1) Notify Bulletin Company in writing, with copies to the hereinafter named employees, that it has no objection to the employment as journeymen pressmen of Edward Henderson, Richard Cummings, Leo Coyle, Charles Shaller, Harold Heydt, Albert Boenning, Francis Roberts and George Trock, or to the employment of any other journeymen pressmen because they are not members of, or have not been approved or cleared by, Philadelphia Newspaper Printing Pressmen's Union No. 16.

C. Respondent Bulletin Company is enjoined and restrained from:

(1) Maintaining, enforcing or otherwise giving effect to any agreement, arrangement, understanding or practice which conditions the hire or employment of journeymen pressmen with Bulletin Company upon membership in, or clearance or approval by, Philadelphia Newspaper Printing Pressmen's Union No. 16.

(2) Refusing to employ Edward Henderson, Richard Cummings, Leo Coyle, Charles Shaller, Harold Heydt, Albert Boenning, Francis Roberts and George Trock, or any other applicants for employment, because they are not members of, or have not received clearance or approval from, Philadelphia Newspaper Printing Pressmen's Union No. 16.

(3) In any like or related manner, interfering with, restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, or in any like or related manner encouraging membership in a labor organization by discriminating against employees in regard to hire or tenure or terms or conditions of employment.

D. Respondent Bulletin Company is ordered and directed to:

(1) Offer immediate employment as journeymen pressmen to Edward Henderson, Richard Cummings, Leo Coyle, Charles Shaller, Harold Heydt, Albert Boenning, Francis Roberts and George Trock.